UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOSEPH HENRY PENNINGTON,

                Petitioner,

    - against -

UNITED STATES OF AMERICA,

                Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
07-CR-00061 (PKC)

PAMELA K. CHEN, United States District Judge:

Before the Court is Petitioner Joseph Henry Pennington's ("Petitioner") writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("§ 2255"). As explained below, Petitioner does not set forth any basis for habeas relief, and his § 2255 petition is denied.

# BACKGROUND

## I. Petitioner's Criminal Prosecution

Petitioner is a 60-year-old man who has been in custody since December 30, 2006. (*See* Presentence Investigation Report ("PSR") ¶¶ 4, 25, 115.) He is serving a 308-month aggregate sentence for armed bank robbery and unlawful use of a firearm. (Judgment, Dkt. 63 at 2; Gov't Opp'n to Mot. to Vacate, Dkt. 98 ("Gov't Br.") at 2.)

### A. Petitioner's Arrest for Bank Robbery

On December 30, 2006, Petitioner robbed an HSBC Bank at 87-03 Queens Boulevard, Queens, New York of $15,424 while brandishing a firearm. (PSR ¶¶ 4–5; Indictment, Dkt. 8 at 1; Dkt. 77.) After fleeing the bank, Petitioner attempted to procure a getaway car by approaching a nearby Dodge Intrepid and pointing his gun at the driver. (PSR ¶ 7.) To his misfortune, the driver was an off-duty New York City Police Department officer. (*Id.*) Upon realizing this, Petitioner fled. (*Id.*) The officer pursued Petitioner on foot. (*Id.*) Petitioner fired multiple shots at the

officer, striking him in the leg. (*Id.* ¶¶ 8–9.) The officer returned fire, striking Petitioner in the torso. (*Id.*) Petitioner was apprehended. (*Id.* ¶¶ 9–10.)

### B. Plea and Sentencing[1]

On October 6, 2008, Petitioner pled guilty to bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and unlawful use and discharge of a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Indictment, Dkt. 8 at 1; Dkt. 55.) During his plea allocution, Pennington admitted under oath that on December 30, 2006, he entered the bank with a firearm, displayed the firearm, demanded and obtained money from the tellers, and then left the bank. (Plea Proceeding Tr., Dkt. 57 at 26:4–27:11.)

On January 23, 2009, Judge Johnson sentenced Petitioner to a 308-month aggregate sentence. (Judgment, Dkt. 63.) The PSR determined that under the United States Sentencing Guidelines ("U.S.S.G."): (1) Petitioner's total adjusted offense level was 31, (PSR ¶ 47); (2) Petitioner's Criminal History Category was VI, (*id.* ¶ 97); (3) Petitioner was a "career offender" under U.S.S.G. § 4B1.1 because he had at least two prior felony convictions for crimes of violence and the current offense of conviction was a crime of violence, (*id.* ¶ 45); and (4) the applicable sentencing guideline range was 308 to 355 months imprisonment, (*id.* ¶ 167). Adopting the PSR, Judge Johnson sentenced Petitioner to 188 months for the bank robbery and a consecutive sentence of 120 months for unlawful use of a firearm, totaling 308 months' imprisonment. (Judgment, Dkt. 63.)

---

[1] The plea and sentencing proceedings in this case were held before the Honorable Sterling Johnson, Jr. This habeas matter was initially reassigned to the Honorable Margo K. Brodie and then to the undersigned on October 12, 2022. (*See* 10/12/2022 Dkt. Order.)

## II.     The Instant Habeas Proceeding

On July 17, 2016, Petitoner, proceeding *pro se*, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking to have his sentence vacated in light of *Johnson v. United States*, 576 U.S. 591 (2015) and because of ineffective assistance of counsel. (Pet'r's Mot. to Vacate, Dkt. 79.) Specifically, Petitioner argued that: (1) he was not a career offender because his prior robbery convictions under New York law were improperly calculated as prior crimes of violence under U.S.S.G. § 4B1.2, (Pet'r's Mot. to Vacate, Dkt. 79 at ECF[2] 7); (2) his conviction for bank robbery under 18 U.S.C. § 2113(a) was not a crime of violence under 18 U.S.C. § 924(c)(3), (*id.*); and (3) his counsel provided ineffective assistance by failing to argue at sentencing that Petitioner's mental health status warranted a downward departure from the sentencing guidelines, (*id*. at ECF 5–6).

On June 23, 2016, an attorney from the Federal Defenders of New York ("Federal Defenders") entered an appearance for Petitioner. (Dkt. 80). On April 9, 2018, the Government filed its opposition to Petitioner's *pro se* habeas petition. (Dkt. 85.) On December 14, 2018, Petitioner's counsel, with consent of the Government, asked the Court to stay Petitioner's yet-unfiled reply brief and his habeas petition pending the United States Supreme Court's decisions in two cases, *Stokeling v. United States*, 586 U.S. 73 (2019) and *Pereira-Gomez v. United States*, 139 S. Ct. 1600 (2019), both of which involved the question of whether robbery as defined under state law constitutes a "crime of violence" for purposes of federal law. (Ltr. Requesting Stay, Dkt. 89.) Ultimately, the Supreme Court denied certiorari in *Pereira-Gomez*,[3] 139 S. Ct. 1600 (2019). In

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] Thus, the Second Circuit's holding in *Pereira-Gomez*—that robbery and attempted robbery under New York law constitute crimes of violence—remains controlling in this Circuit.

3

*Stokeling*, the Supreme Court held that robbery, as defined under Florida law, constitutes a crime of violence "because Florida robbery requires [the] same degree of 'force'" as the elements clause of the Armed Career Criminal Act ("ACCA") does. 586 U.S. at 86.

On September 6, 2022, Judge Brodie, who was then presiding over this matter, issued a show cause order directing Petitioner to "either: (1) inform the Court, by letter motion, that he is withdrawing the Petition, or (2) serve and file his reply papers in support of the Petition." (9/6/2022 Show Cause Order, Dkt. 91.) On his own, in a letter dated September 19, 2022, Petitioner, informed the Court of his intention to move forward with the petition. (Pet'r's Ltr., Dkt. 92.) On October 12, 2022, the day this matter was reassigned to the undersigned, the Court issued an order first noting Petitioner's *pro se* filing of a letter indicating that he wished to proceed, and then directing the Federal Defenders to advise "whether [they] still represented Petitioner." (*See* 10/12/2022 Dkt. Order.) On October 24, 2022, the Federal Defenders wrote to confirm its continuing representation of Petitioner. (Fed. Defenders Ltr., Dkt. 93.)

On February 5, 2023, Federal Defenders filed a Memorandum of Law in Support of Petitioner's Motion to Vacate under 28 U.S.C. § 2255. (Pet'r's Mem. Supp. Mot. to Vacate, Dkt. 96 ("Pet'r's Br.").) Notably, the brief ignored the three arguments Petitioner had made in his *pro se* petition, instead making only one <u>new</u> argument, i.e., that Petitioner's trial counsel was ineffective because he advised Petitioner to plead guilty to a completed robbery—a crime of violence—when the facts were insufficient to establish that offense, and at most, established

---

*See United States v. Pereira-Gomez*, 903 F.3d 155, 166 (2d Cir. 2018) ("In short, we conclude that 'robbery' as it is defined in N.Y. Penal Law § 160.00, qualifies as a 'crime of violence' under the 'force clause' of application note 1(B)(iii) to Section 2L1.2 of the 2014 Guidelines. Because that definition of robbery—forcible stealing—is common to all degrees of robbery under New York law, we hold that robbery in any degree is a crime of violence under the 'force clause' of application note 1(B)(iii) to Section 2L1.2 of the 2014 Guidelines. We also hold that attempted robbery under New York law is a 'crime of violence' under the 'force clause.'").

4

attempted robbery, which Petitioner argues is not a crime of violence. (*Id.* at 4–5.) On March 31, 2023, the Government responded in opposition. (Gov't Br., Dkt. 98.) This motion is now ripe for review.

## LEGAL STANDARD

Section 2255 permits "[a] prisoner in custody under sentence of a [federal] court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such habeas relief, the petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks omitted) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). Where a petitioner demonstrates such error, the court conducts a "harmless error" analysis to determine whether the error warrants reversal. *Peck v. United States*, 106 F.3d 450, 455 (2d Cir. 1997). "[I]f 'the matter is so evenly balanced that [the federal judge] feels himself [or herself] in virtual equipoise as to the harmlessness of the error' the petitioner should prevail." *Lainfiesta v. Artuz*, 253 F.3d 151, 158 (2d Cir. 2001) (first alteration in original) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

In general, a § 2255 motion is not a substitute for a direct appeal. *See generally United States v. Frady*, 456 U.S. 152, 164–66 (1982). Thus, "[w]here a [petitioner] has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the [petitioner] can first demonstrate either 'cause' and actual 'prejudice[]' or that he is 'actually innocent[.]'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see also Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992) (collecting cases) ("It is generally accepted that a procedural default of even a constitutional issue will bar review

5

under § 2255, unless the [petitioner] can meet the 'cause and prejudice' test."). But "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## DISCUSSION

### I. Petitioner's Original Habeas Arguments Fail

#### A. Petitioner Abandoned His Original Habeas Arguments

As an initial matter, Petitioner has abandoned his three original arguments by failing to brief them. *See Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005) (an argument is "abandoned" where a party "fail[s] to discuss [the] claim anywhere in [its] brief"). Here, Petitioner abandoned his original arguments by not referring to them at all in his principal brief and by instead raising an entirely new argument. (*Compare* Pet'r's Mot. to Vacate, Dkt. 79 *with* Pet'r's Br., Dkt. 96.) Thus, his original arguments are abandoned.

#### B. Petitioner's Original Arguments Also Fail on the Merits

Even if Petitioner had preserved his original arguments, they would fail on the merits. Petitioner's original arguments were that: (1) he was not a career offender under the ACCA because his prior robbery convictions under New York law do not constitute crimes of violence under U.S.S.G. § 4B1.2, (Pet'r's Mot. to Vacate, Dkt. 79 at ECF 4, 7); (2) the bank robbery of which he was convicted in this case under 18 U.S.C. § 2113(a) does not constitute a crime of violence for purposes of the firearms charge to which he pled guilty under 18 U.S.C. § 924(c)(iii), (*id.* at ECF 4); and (3) his counsel provided ineffective assistance by failing to argue at sentencing that Petitioner's mental health status warranted a downward departure from the sentencing guidelines range, (*id.* at ECF 5–6).

6

1. <u>Petitioner's Prior Robberies Constitute Crimes of Violence</u>

Petitioner initially argued that habeas relief is proper following *Johnson v. United States*, which held that the ACCA's residual clause[4] is void for vagueness. 576 U.S. at 606. In light of *Johnson*, then, Petitioner reasoned that his prior New York robberies do not count as crimes of violence under U.S.S.G. § 4B1.2 and so he is no longer a career offender under the ACCA. (Pet'r's Mot. to Vacate, Dkt. 79 at ECF 8.) This is incorrect.

As an initial matter, "§ 4B1.2(a)'s residual clause is not void for vagueness" as the ACCA's was. *Beckles v. United States*, 580 U.S. 256, 270 (2017). In *Johnson*, the Supreme Court held that the ACCA's residual clause was unconstitutionally vague for "tying the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime rather than to real-world facts or statutory elements" and for "leav[ing] uncertainty about how much risk it takes for a crime to qualify as a violent felony." 576 U.S. at 596–602. However, in *Beckles*, the Court made a crucial distinction. There, the Court explained that while the ACCA's residual clause mandated a higher range of sentences "in an impermissibly vague way," § 4B1.2(a)'s residual clause established *advisory* sentencing ranges that "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." 580 U.S. at 262–63. For that reason, "the Guidelines are not amenable to a vagueness challenge." *Id.* at 265.

Moreover, in *United States v. Jones*, decided after *Johnson*, the Second Circuit held that first-degree robbery under New York law is "categorically a crime of violence under the [U.S.S.G.] residual clause." 878 F.3d 10, 14 (2d Cir. 2017). The Second Circuit explained:

---

[4] The ACCA's residual clause defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . *involves conduct that presents a serious potential risk of physical injury to another*." *Johnson*, 576 U.S. at 594 (emphasis original) (quoting 18 U.S.C. § 924(e)(2)(B)).

7

> The [U.S.S.G.] residual clause provides that a crime of violence includes any offense that 'involves conduct that presents a serious potential risk of physical injury to another.' [U.S.S.G.] § 4B1.2(a)(2). Plainly, a robber who forcibly steals property from a person or from his immediate vicinity, while armed with a deadly weapon, engages in 'conduct that presents a serious potential risk of physical injury to another.'

(*Id.* at 17.)

Here, Petitioner was convicted of first-degree robbery under New York law on four occasions. (*See* PSR ¶¶ 83, 85, 90; Judgment, Dkt. 63.) As confirmed by the Second Circuit in *Jones*, after *Johnson*, these convictions constitute crimes of violence. *See Jones*, 878 F.3d at 17. The Probation Department therefore correctly counted Petitioner's three prior robbery convictions as crimes of violence under § 4B1.2(a)'s residual clause and correctly concluded that Petitioner qualifies as "career offender" under U.S.S.G. § 4B1.1. This argument therefore provides no basis for habeas relief.

      2.    Petitioner's Bank Robbery in the Instant Case Constitutes a Crime of Violence Under the ACCA's Residual Clause

Petitioner argues that habeas relief is proper because federal bank robbery under 18 U.S.C. § 2113(a), to which he pled guilty in this case, is not a crime of violence as defined in the ACCA's residual clause. Again, this is incorrect.

In *United States v. Moore*, the Second Circuit held that "federal bank robbery 'by force and violence, or by intimidation' under 18 U.S.C. § 2113(a) qualifies as a crime of violence" according to the U.S.S.G. commentary. 916 F.3d 231, 237 (2d Cir. 2019); *see also United States v. Evans*, 924 F.3d 21, 29 n.5 (2d Cir. 2019) (collecting cases). The Guidelines explicitly enumerate only four crimes as crimes of violence—"burglary of a dwelling, arson, or extortion, [or crimes] invol[ving the] use of explosives[.]" U.S.S.G. § 4B1.2(a)(2) (amended 2016) (including in current version explicit enumeration of robbery as a crime of violence). The commentary of U.S.S.G. §

4B1.2(a)(2) in the U.S.S.G. enacted November 1, 2008, however, specifically included robbery as a crime of violence. *Id.* cmt. n.1; *Moore*, 916 F.3d at 238. "Commentary . . . in the Guidelines must be given controlling weight unless they: (1) conflict with a federal statute, (2) violate the Constitution, or (3) are plainly erroneous or inconsistent with the Guidelines provision they purport to interpret." *Id.* at 237 (citing *United States v. Jones*, 878 F.3d at 18). Where "[n]either party contends that any [of the above] flaws exist," courts must treat the offense as "as if it were an enumerated offense in the Guidelines text." *Id.*

In treating federal bank robbery as an enumerated offense, the Second Circuit applied the modified categorical approach[5] to find that a federal bank robbery conviction "'by force and violence, or by intimidation' is a crime of violence under the commentary clause of the Career Offender Guidelines." *Id.* at 239. Section 2113 of Title 18 of the United States Code is thus "subject to [U.S.S.G.] § [ ]4B1.2's sentencing enhancement." *Id.*

In this case, Petitioner pled guilty to federal bank robbery under 18 U.S.C. § 2113(a) "by force, violence and intimidation." (Indictment, Dkt. 8; Plea, Dkt. 55.) His instant conviction, therefore, is for a crime of violence. *See Moore*, 916 F.3d at 238. Accordingly, this argument does not provide a basis for habeas relief.

### 3. Petitioner's Counsel Presented Argument Related to Petitioner's Mental Health

Petitioner argues that his trial counsel provided ineffective assistance by failing to argue at sentencing that Petitioner's mental health status warranted a downward departure from the

---

[5] In applying the modified categorical approach, courts first identify the crime and its elements, and then "the court 'consider[s] the minimum conduct necessary for a conviction of the predicate offense . . . , and then considers whether such conduct amounts to a crime of violence' under the statute." *DeJesus v. United States*, No. 11-CR-974 (CM), 2019 WL 6711478, at *2 (S.D.N.Y. Dec. 10, 2019) (alterations in original) (quoting *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018)).

9

guidelines. (Pet'r's Mot. to Vacate, Dkt. 79 at ECF 7.) This argument is meritless. The very first argument in Petitioner's sentencing memorandum asked the Court for a downward departure from the guidelines range because of Petitioner's mental health. (*See* Pet'r's Sentencing Mem., Dkt. 59 at ECF 1–2 ("[I]t is requested that the court consider the [Petitioner's] thirty[-]year history of battling mental disease as a basis to sentence the [Petitioner] below the guideline range in this matter; or in the alternative, to the bottom of the guideline.").) Because Petitioner's counsel raised this specific argument at sentencing—as indicated in the record—Petitioner fails to raise a valid ineffective counsel claim on this basis. Thus, this argument provides no basis for habeas relief.

II.     **Petitioner's New Argument As to Ineffective Assistance of Counsel Does Not Support Habeas Relief**

   A.     **Petitioner's New Argument Is Waived**

In his counseled brief, Petitioner raises a new argument—that his trial counsel was ineffective because he advised Petitioner to plead guilty to a completed robbery when the facts, at most, established *attempted* robbery, which is not a crime of violence. (Pet'r's Br., Dkt. 96 at 4–5.) The Court notes that Petitioner forfeited this claim as he abandoned his initial arguments and improperly raised a new argument for the first time on reply. (*Compare* Pet'r's Mot. to Vacate, Dkt. 79, *with* Pet'r's Br., Dkt. 96.) To preserve an argument, a petitioner must raise the argument in their initial brief. *See Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010). If a party raises new arguments at a later stage, the new arguments are typically deemed waived. *See, e.g.*, *id.* (finding that issues raised for the first time in reply brief are generally deemed waived); *In re Weatherford Int'l Sec. Litig.*, No. 11-CV-1646 (LAK) (JCF), 2013 WL 12185082, at *2 n.2 (S.D.N.Y. Nov. 19, 2013) (same); *Fan v. United States*, No. 12-CR-00068 (DLI), 2022 WL 198467, at *7 (E.D.N.Y. Jan. 21, 2022) (same). Petitioner did not do so here, and so the Court need not reach the merits of Petitioner's newly raised argument.

10

B.     **Petitioner's New Argument Is Meritless**

Even if the Court were to consider Petitioner's new argument, that argument would not support habeas relief. The core of Petitioner's latest argument is that a robbery is completed only when the robber "has won his way to a place of temporary safety." (Pet'r's Br., Dkt. 96. at 4 (quoting *United States v. DeStefano*, 59 F.3d 1, 4 n.5 (1st Cir. 1995)).) Petitioner contends that, in this case, "[t]he robbery was foiled before it was complete" because Petitioner "did not get the money to a 'place of temporary safety'" before he was apprehended. (*Id.* at 1 (quoting *DeStefano*, 59 F.3d at 4 n.5).) Thus, Petitioner argues that his counsel was ineffective "in allowing him to plead guilty to a completed robbery," when one had not been completed. (*Id.*) Petitioner's statement of the law, however, is unfounded. As a result, his ineffective assistance of counsel claim fails.

1.     Legal Standard Governing Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Terry Williams v. Taylor*, 529 U.S. 362, 390–91 (2000) (affirming that ineffective assistance of counsel claims "are squarely governed by *Strickland*"). First, *Strickland* requires the petitioner to "show that counsel's performance was deficient," meaning that it fell below "an objective standard of reasonableness" and "that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687–88. The reasonableness standard encompasses a "wide range of professionally competent assistance," and "[m]ore specific guidelines are not appropriate." *Id.* at 688–90. In fact, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," and even "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 690–91; *see also Greiner v. Wells*, 417 F.3d

11

305, 319 (2d Cir. 2005) ("We will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside." (internal quotation marks omitted)). Thus, "the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). There are no bright line or mechanical rules for this analysis. Given the "countless ways to provide effective assistance in any given case," a court evaluating an ineffectiveness claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 689–90.

Next, *Strickland* requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the outcome would have differed, counsel's error was prejudicial to the defense, constituting ineffective assistance. *Id.* at 692. Where there are no conflicts of interest or other issues where prejudice may be presumed, the petitioner must prove prejudice—that the "particular errors of counsel [even if unreasonable] . . . actually had an adverse effect on the defense." *Id.* at 693. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome[.]" *Id.* Thus, the petitioner must show a reasonable probability that "the factfinder would have had a reasonable doubt respecting guilt" but for counsel's error(s). *Id.* at 695. "In making this determination, a court . . . must [have] consider[ed] the totality of the evidence [that was] before the judge or jury." *Id.*

    2.    <u>Petitioner's Counsel Provided Effective Assistance</u>

Turning to *Strickland's* first element, Petitioner has not identified any "acts or omissions of counsel that [were not] . . . the result of reasonable professional judgment." *Strickland*, 466

12

U.S. at 690.  Petitioner argues that his most recent robbery was not "completed."  (*See* Pet'r's Br., Dkt. 96. at 1)  That argument is legally wrong, as explained in more detail below.  Consequently, the Court is not persuaded that Petitioner's previous counsel acted unreasonably by permitting Petitioner to plead guilty to a crime that—at least according to the allegations in the Indictment and Petitioner's admissions at the plea hearing—he had committed.[6]

The crime of bank robbery as defined in 18 U.S.C. § 2113(a) does not require the robber to reach a place of "temporary safety" for the crime to be completed.  Instead, a person is guilty of bank robbery if they (1) took, or attempted to take, money belonging to, or in the custody, care, or possession of, a bank, credit union, or savings and loan association; (2) the money was taken by force and violence, or by intimidation; and (3) the deposits of the institution were federally insured.  18 U.S.C. § 2113(a); *see also Moore*, 916 F.3d at 238.  Reaching a place of temporary safety is not an element of the offense.  So, regardless of whether Petitioner reached a place of temporary safety before his apprehension, his conduct still satisfies the elements of bank robbery as defined by the statute: he was indicted with, and pled guilty to, forcefully or violently taking $15,424 from a federally insured bank.  (Indictment, Dkt. 8 at 1–2; Dkt. 77.)

Petitioner's arguments to the contrary are not persuasive.  For instance, Petitioner heavily relies on a footnote in a First Circuit decision, *United States v. DeStefano*, which, in turn, relies on a California Supreme Court decision, *People v. Fierro*, for the proposition that "the 'crime of robbery is not complete until the robber has won his way to a place of temporary safety.'"  (Pet'r's

---

[6] Even assuming there was a temporary safety requirement for robbery, and Petitioner's counsel's actions "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, his ineffective assistance of counsel argument would still fail the second prong.  The result of the sentencing would not have been different if Petitioner were only guilty of attempted robbery because "attempted bank robbery is [also] a categorical match for a crime of violence under the force clause of § 924(c)(3)(A)." *Collier v. United States*, 989 F.3d 212, 221 (2d Cir. 2021).

13

Br., Dkt. 96 at 4 (quoting *DeStefano*, 59 F.3d at 4 n.5 (quoting *Fierro*, 1 Cal.4th 173, 226 (1991))).) Petitioner also relies on the Second Circuit *Jones* case for the same proposition. (*Id.* (citing *Jones*, 878 F.3d at 19)). These cases, however, have no application here.

First, *DeStefano* is not controlling because it is not a Second Circuit or U.S. Supreme Court opinion. Moreover, it is inapposite because it does not involve federal bank robbery. In *DeStefano*, the First Circuit reviewed the district court's jury instructions for "reaching to temporary safety" in a case stemming from a prison escape. 59 F.3d at 4. *DeStefano*, then, is inapposite to the elements of federal bank robbery at issue here. In addition, *Fierro*, on which the *DeStefano* court relied, is also inapposite because the issue before that court related to a *California* state statute. 1 Cal.4th at 226. The *Fierro* court's holding, then, does not apply to this case, which arises from a guilty plea under a wholly different statutory regime.

Similarly, *Jones* is inapposite because Petitioner takes the cited language out of context. The thrust of the analysis in *Jones* is whether a robbery conviction *under New York state law* is a crime of violence for sentencing enhancement purposes. There, the Second Circuit applied the modified categorical approach to compare the elements of the conviction and the generic offense to find that robbery under New York state law is a crime of violence under § 4B1.2(a). *Jones*, 878 F.3d at 19. In so finding, the Second Circuit observed that the New York robbery statute "d[id] not criminalize the use of force after the robber successfully carried the property away and reached a place of temporary safety." *Id.* at 19–20. This has no bearing on the elements of federal bank robbery under 18 U.S.C. § 2113(a), the statute at issue here. *Jones*, then, does not support Petitioner's position.

Since federal bank robbery does not in fact require the robber to have reached a place of temporary safety per the language of 18 U.S.C. § 2113(a), Petitioner's prior counsel's advice to

14

plead guilty to robbery necessarily did not "f[a]ll below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Plaintiff's ineffective assistance of counsel argument on this basis fails.

## CONCLUSION

Petitioner's § 2255 motion is denied.  A certificate of appealability shall not issue because the Court does not find that reasonable jurists could debate that the motion "should have been resolved in a different manner" or that it presents issues "adequate to deserve encouragement to proceed further."  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also* 28 U.S.C. § 2253(c).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 16, 2024
       Brooklyn, New York

15